UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VERONICA MALDONADO, o/b/o, A.C., a minor child, | ) ) ) | CASE NO. 4:20-cv-1878 |
| Plaintiff, | ) ) | JUDGE DAN AARON POLSTER |
| v. | ) ) ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| KILOLO KIJAKAZI, *Acting Comm'r of Soc. Sec.*, | ) ) ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff, Veronica Maldonado (Plaintiff), *pro se*, on behalf of her minor child AC, challenges the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (Commissioner),[1] denying an application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a party." Fed.R.Civ.P. 25(d).

Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. Procedural History

On July 20, 2017, Plaintiff, on behalf of her child AC, filed an application for children's SSI, alleging a disability onset date (the same as her birthday) in 2009. (R. 15, Transcript (Tr.) 151). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 92-106). Plaintiff participated in the hearing on August 14, 2019, was not represented by counsel, and testified. (Tr. 29-51). Plaintiff's minor child and a medical expert (ME) also attended the hearing and testified. *Id*. On September 20, 2019, the ALJ found AC was not disabled. (Tr. 23). On June 23, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-5). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 19 & 20). Plaintiff's *pro se* brief does not meaningfully identify any actionable error by the ALJ, although it suggests a general disagreement with the ALJ's conclusion that AC had less than marked limitations in all six domains assessed when considering a child's functioning. (R. 19).

## II. Evidence

**A. Relevant Medical Evidence**[2]

1. **Treatment and Educational Records**

On May 17, 2017, an Individualized Education Program (IEP) was designed for AC. (Tr.

---

[2] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

2

228). The IEP noted that AC had limited English proficiency, strong listening and comprehension skills, and limited sight word vocabulary causing weaknesses when reading independently. (Tr. 229). The IEP also documented that AC liked to play with her cousins, preferred working in small groups, and had mild deficits with visual motor integration. (Tr. 229-30, 236). Her scores on a Woodcock-Johnson reading, writing, and math tests yielded results in the low to low average range. (Tr. 233-235).

On September 26, 2017, AC was seen by a social worker. (Tr. 326). Plaintiff reported that AC was hyperactive, had difficulty staying on task, and was defiant and argumentative. *Id*. AC reported having two friends, but Plaintiff stated that she does not retain them for long because AC is mean to them. (Tr. 327). On examination, AC's "[g]eneral motor activity, including gait, psychomotor coordination and speed, and purposeful behavior appear within normal limits." (Tr. 328). AC was oriented x3, had well-articulated speech, borderline intellectual functioning, poor insight and judgment, mildly anxious mood, and range of affect within normal limits. (Tr. 328-329). The social worker assessed unspecified attention-deficit/hyperactivity disorder (ADHD). (Tr. 329). An examination of AC in October of 2017 yielded similar results. (Tr. 334).

On May 24, 2019, intervention specialist Heather Westrick of the Ohio Distance & Electronic Learning Academy indicated that AC gave her best effort on testing, yielding reading skills at a second-grade level and math skills at a kindergarten level. (Tr. 357-258). She completed a form indicating that AC had "an obvious problem" in acquiring and using information, noting that her biggest weakness was in her math skills, that she was "better" with reading phonics, and that she needed extensive support to complete her work inside and outside of class. (Tr. 361). Ms. Westrick further opined that AC had problems in attending and completing tasks that would occur on a weekly (versus daily or hourly) basis. (Tr. 362). She

noted that AC attended class and participated consistently, but typically did not follow directions. (Tr. 362). Ms. Westrick did not complete the entire form, and thus did not provide opinions regarding AC's ability to interact and relate with others, move about or manipulate objects, or care for herself. (Tr. 363–367).

On May 3, 2019, an IEP for AC noted that she had "showed growth" in her math, reading, and language skills, and that she was a "wonderful student." (Tr. 392-393).

### 2. Medical Opinions Concerning AC's Limitations

On September 26, 2017, AC underwent a consultative psychological evaluation performed by David Chiarella, Ph.D., a pediatric psychologist, at the request of the State Agency. (Tr. 321). Plaintiff reported that AC was eight years old, had learning issues, behavioral problems, received special education services, was currently home-schooled, and would "fight" and "argue" with her sister. (Tr. 321). Dr. Chiarella noted AC had never received any psychological/psychiatric services. (Tr. 322). On mental status examination, AC was cooperative, compliant, and engaged during her interview; used and understood conversational speech; offered spontaneous conversation and asked many questions; was socially responsive, maintained eye contact and was alert; and had clear, coherent and contextually relevant speech. (Tr. 322). She was able to attend and concentrate, persisted in a reciprocal conversation and was not distracted, and denied being sad, depressed, angry, or anxious. *Id*. Ultimately, Dr. Chiarella opined that AC's ability to acquire, use, and retain general information "will be limited by her previously measured borderline intellectual skills as well as her academic difficulties[,]" and AC was not demonstrating cognitive and academic skills at an age-appropriate level. (Tr. 323). He also noted that AC's ability to attend and concentrate was adequate; "she has never been treated for any attention deficits or hyperactivity[;]" that she had difficulty maintaining age-appropriate

4

relationships; and Plaintiff reported that AC did not bathe and dress herself independently, but she brushed her teeth on her own. *Id*.

On November 29-30, 2017, State Agency psychological consultant Mark Hill, Ph.D., and pediatrician Bruce Mirvis, M.D., reviewed AC's records. (Tr. 58-59). They assessed AC with less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for herself, and health and physical well-being. *Id*.

On April 17, 2018, State Agency psychological consultant Irma Johnston, Psy. D., and pediatrician Uma Gupta, M.D., reviewed AC's records. (Tr. 70-71). They assessed AC with less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for herself, and health and physical well-being. *Id*.

**B. Relevant Hearing Testimony**

At the August 14, 2019 hearing, Dr. William Silberberg, a pediatrician, testified as the ME. He premised the testimony upon the assumption that Plaintiff's claims for disability were based on the following diagnoses: Attention Deficit Hyperactivity Disorder (ADHD), asthma, a disruptive behavior disorder, a learning problem or learning disorders, borderline intellectual/cognitive ability, and deficits in motor coordination. (Tr. 44). The ME testified that there was sufficient evidence in the record to support the above diagnoses. (Tr. 45). The ME then pointed to and discussed several pieces of evidence, including test scores and examinations by other medical sources. (Tr. 45-47). The ME opined that AC did not meet or medically equal any of the listings. (Tr. 48). The ME further testified that, in his opinion, AC had a less than marked limitations in acquiring and using information, attending and completing tasks, interacting and

relating with others, moving about and manipulating objects, and caring for herself. (Tr. 48-49).

### III. Disability Standard

To qualify for SSI benefits, "[a]n individual under the age of 18 shall be considered disabled ... if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C). To qualify, a child recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100, 416.1201.

For children's disability claims, the regulations prescribe a three-step sequential evaluation process. 20 C.F.R. § 416.924(a). At step one, a child must not be engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). At step two, a child must suffer from a "severe impairment." 20 C.F.R. § 416.924(c). At step three, disability will be found if a child has an impairment, or combination of impairments, that meets, medically equals or functionally equals an impairment listed in 20 C.F.R. § 404, Subpt. P, App'x 1; 20 C.F.R. § 416.924(d). To make this latter determination, the Commissioner assesses the functional limitations caused by the impairment(s). 20 C.F.R. § 416.926a(a). This involves the consideration a child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself/himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). If a child's impairment(s) results in "marked" limitations in two domains, or an "extreme" limitation in one domain, the impairment(s) functionally equal the listings and the child will be found disabled. 20 C.F.R. § 416.926a(d).

An "extreme" limitation is one that "interferes very seriously with [a child's] ability to

6

independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation means "more than marked." 20 C.F.R. § 416.926a(e)(3)(i). "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id*.

A "marked" limitation is one which seriously interferes with functioning. 20 C.F.R. § 416.926a(e)(2)(i). "Marked" limitation means "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(i). "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id*.

If an impairment is found to meet, or qualify as the medical or functional equivalent of a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant was born on *** 2009. Therefore, she was a school-age child on July 11, 2017, the date application was filed, and is currently a school-age child (20 C.F.R. § 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since July 11, 2017, the application date (20 CFR 416.924(b) and 416.971 *et seq*.).

3. The claimant has the following severe impairments: asthma, deficits in motor coordination, attention deficit hyperactivity disorder, anxiety, oppositional defiant disorder, and learning disorder/borderline intellectual disability/cognitive (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

> 5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).
>
> 6. The claimant has not been disabled, as defined in the Social Security Act, since July 11, 2017, the date the application was filed (20 CFR 416.924(a)).

(Tr. 14-15, 22).

The ALJ found AC had less than marked limitations in all six domains. (Tr. 18-22).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff Assignment of Error

It is well settled that "inartfully pleaded allegations in a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers." *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (internal quotation marks omitted) (*citing Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Nevertheless, it is not the court's function to search the administrative record for evidence to support Plaintiff's undeveloped argument and find inconsistencies. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). The *McPherson* court stated that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *Id*.; *see also Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 447 F.3d 861, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006).

Plaintiff's brief does not meaningfully identify any actionable error by the ALJ, and offers little more than disagreement with the ALJ's conclusion that AC had less than marked limitations in all six domains. (R. 19). At best, Plaintiff asserts that the ME, Dr. Silberberg, "contradicts himself" by finding AC suffered from various medical conditions while at the same time finding those conditions did not cause a disabling level of symptoms.[3] *Id*.

The court cannot take such an undeveloped assertion and transform it into a substantive

---

[3] The Commissioner suggests that while Plaintiff's brief refers to Dr. Silberberg as contradicting himself, Plaintiff's brief cites to portions of the ALJ's decision, which the Commissioner "suggests that [Plaintiff] has simply confused the ALJ with Dr. Silberberg, and is in fact challenging directly the ALJ's findings, and not Dr. Silberberg's testimony." (R. 20, PageID# 639 n. 3). Regardless of whether Plaintiff believes the ALJ, the ME, or both contradicted themselves, she has in any event failed to identify any grounds for remand beyond mere disagreement with the decision.

9

argument without improperly becoming an advocate for Plaintiff. The Sixth Circuit had made clear that "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *See. e.g., Kennedy v. Commissioner*, 87 Fed. App'x 464, 2003 WL 23140056, at *1 (6th Cir. Dec. 12, 2003) (citing *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)) (rejecting perfunctory argument); *McClellan v. Astrue*, 804 F. Supp. 2d 678, 688 (E.D. Tenn. 2011) (court under no obligation to scour record for errors not identified by claimant). Therefore, the court finds Plaintiff has failed to identify a cognizable argument for this court's review.

Even if the court were to construe Plaintiff's brief as raising a cognizable issue, the court finds nothing inherently contradictory in the ME's testimony or the ALJ's decision. Simply put, although the ALJ's decision found that AC has mental and physical impairments that impact her functioning in all six domains, that determination does not render untenable the ALJ's next finding—that Plaintiff's limitations do not rise above the level of "less than marked" in all six domains. Even where impairment(s) are designated severe, they are not necessarily debilitating. The Sixth Circuit has explained that a diagnosis alone is of little consequence, as it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment); *cf. Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 806 (6th Cir. 2008) ("a diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits").

The court, in considering Plaintiff's appeal, can only review whether the ALJ's decision was supported by substantial evidence. The Sixth Circuit recently addressed the substantial evidence standard, when it stated:

10

> Th[e] [substantial evidence] standard means that "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). In reviewing the ALJ's decision, we 'may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Finally, [the plaintiff] bears the burden of demonstrating a RFC more restrictive than that determined by the ALJ. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

*O'Brien v. Comm'r of Soc. Sec.*, 819 Fed. App'x 409, 416 (6th Cir. 2020). "It is the ALJ's place, and not the reviewing court's, to resolve conflicts in evidence." *Collins v. Comm'r of Soc. Sec.*, 357 Fed. App'x 663, 670 (6th Cir. 2009) (citations omitted).

The ALJ's determination that Plaintiff had less than marked limitation in all six domains is supported by four State Agency[4] medical consultants, including two psychologists and two pediatricians. (Tr. 58-59. 70-71). The ALJ found these opinions "somewhat persuasive," but noted that they did not have the benefit of the evidence received at the hearing, including the reports that AC was progressing academically. (Tr. 17). In addition, the ALJ found the ME's testimony—that AC had less than marked limitation in all six domains—to be "persuasive," as the ME was the only medical source "to have the opportunity to review the record in its entirety and offer an opinion consistent with that record." (Tr. 17). To that determination, the ALJ noted

---

[4] The regulations now refer to the opinions of State Agency consultants as a "prior administrative medical finding," which is defined as "a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review … in your current claim based on their review of the evidence in your case record, such as: (i) [t]he existence and severity of your impairment(s); (ii) [t]he existence and severity of your symptoms; (iii) [s]tatements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; (iv) [i]f you are a child, statements about whether your impairment(s) functionally equals the listings in Part 404, Subpart P, Appendix 1 …." 20 C.F.R. § 416.913(a)(5).

11

that the ME was also able to observe and consider the hearing testimony from AC and Plaintiff. *Id*.

There is ample case law concluding that State Agency medical consultative opinions may constitute substantial evidence supporting an ALJ's decision. *See, e.g., Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010) (finding that the ALJ's decision was supported by substantial evidence where it was consistent with the opinion of the state agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that state agency physicians' opinions that a claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue*, 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."); *Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (state agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work."). Thus, the ALJ's finding that AC had less than marked limitations in all six domains is supported by five different medical sources and, for purposes of the court's review, is generally supported by substantial evidence.

To the extent Plaintiff is asking the court to reweigh the evidence *de novo* and arrive at its own determination with respect to AC's level of functioning in the six domains, such an invitation exceeds the scope of this court's review. The court declines to supplant the ALJ's decision that is supported by multiple medical sources.

## VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: January 14, 2022

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.** *See Berkshire v. Beauvais,* 928 F. 3d 520, 530-31 (6th Cir. 2019).